IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SUSAN RENEE POLL,                    :
                                     :
        Plaintiff,                   :
                                     :   CIVIL ACTION NO.
        v.                           :   1:07-CV-0959-RWS
                                     :
DELI MANAGEMENT, INC. and            :
MICHAEL HALBERT,                     :
                                     :
        Defendants.                  :
                                     :

## ORDER

Now before the Court is Defendant Michael Halbert's Motion to Dismiss

[4]; Plaintiff's Motion to Strike [7]; Plaintiff's Motion to Remand to State Court

and for Attorney's Fees [8]; and Plaintiff's Motion to Amend the Complaint [8].

After considering the entire record, the Court enters the following Order.

### Background

This is a slip-and-fall case. Plaintiff initially filed this action in the State

Court of Fulton County on March 26, 2007, alleging negligence against

Defendants Deli Management, Inc. ("DMI"), a restaurant with locations in

Fulton County, Georgia, and its manager, Michael Halbert.  Plaintiff alleges that she slipped and fell on a wet floor in Defendants' restaurant and suffered injuries as a result of Defendants' failure to exercise ordinary care in maintaining the premises.  Plaintiff alleges that DMI owned and controlled and Defendant Halbert possessed and controlled the restaurant in which she fell, and thus both owed a duty to exercise ordinary care to keep the premises safe.

Plaintiff is a citizen of the state of Florida.  Defendant DMI is a Texas corporation with its principal place of business in Texas.  Defendant Halbert is a resident of Fulton County, Georgia.

On April 30, 2007, DMI removed this action to this Court on the basis of diversity of citizenship.[1]  In support of removal, DMI states that Plaintiff's joinder of Mr. Halbert was fraudulent, and calculated to avoid removal of this action.  Plaintiff now seeks remand of this action to the State Court of Fulton County, Georgia.

In the event that this Court has jurisdiction over the instant matter, Defendant Halbert has moved to be dismissed from this action.  Plaintiff has

---

[1] Defendant Halbert did not join DMI in seeking removal of the instant action.

2

AO 72A
(Rev.8/82)

moved to strike an affidavit submitted by Mr. Halbert in support of dismissal.

Finally, Plaintiff has moved for leave to amend her Complaint.

## Discussion

### I.    Motion to Remand

In her Motion to Remand, Plaintiff contends that this Court does not have removal jurisdiction under 28 U.S.C. § 1441(b) because Defendant Halbert is a citizen of the state of Georgia.  Plaintiff also contends that this action should be remanded because Defendant Halbert did not timely file an express consent to the Notice of Removal in violation of the rule of unanimity.[2]

### A.    Applicable Standard

Unless Congress explicitly provides otherwise, a defendant may remove to federal court a civil action brought in state court, provided that the federal court has original jurisdiction over the action.  28 U.S.C. § 1441(a)-(b). Original jurisdiction may be based on either the presence of a federal question or diversity of citizenship of the parties.  28 U.S.C. §§ 1331, 1332.

---

[2] Because of the Court's disposition below, the Court does not address whether Defendant Halbert's failure to consent to the Notice of Removal requires remand.

AO 72A
(Rev.8/82)

Where the court's removal jurisdiction is predicated on diversity of citizenship, several constraints on the exercise of jurisdiction exist.  First, complete diversity is required.  That is, every plaintiff must be diverse from every defendant.  Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir. 1998).  Second, even where there is complete diversity, removal jurisdiction is expressly proscribed in cases where a properly joined and served defendant is a citizen of the state where the action was originally brought.  28 U.S.C. § 1441(b); see also generally Caterpillar Inc. v. Lewis, 519 U.S. 61, 68, 117 S. Ct. 467, 136 L. Ed. 2d 437 (1996).

The party seeking removal bears the burden of establishing federal jurisdiction.  Friedman v. New York Life Ins. Co, 410 F.3d 1350, 1353 (11th Cir. 2005).  Removal statutes should be construed narrowly with any doubt resolved in favor of remand.  Allen v. Christenberry, 327 F.3d 1290, 1293 (11th Cir. 2003); Diaz v. Sheppard, 85 F.3d 1502, 1505 (11th Cir. 1996); see also Burns v. Windsor Ins. Co., 31 F.3d 1092, 1095 (11th Cir. 1994) ("Defendant's right to remove and plaintiff's right to choose his forum are not on equal footing; . . . removal statutes are construed narrowly; where plaintiff and defendant clash about jurisdiction, uncertainties are resolved in favor of

4

remand.").  Sound reasons exist for so limiting the exercise of removal

jurisdiction.  For one, the removal of cases to federal courts implicates

principles of federalism.  As the Supreme Court has explained:

> The power reserved to the states under the Constitution
> to provide for the determination of controversies in their
> courts, may be restricted only by the action of Congress
> in conformity to the Judiciary Articles of the
> Constitution.  "Due regard for the rightful independence
> of state governments, which should actuate federal
> courts, requires that they scrupulously confine their own
> jurisdiction to the precise limits which the statute has
> defined."

Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 109, 61 S. Ct. 868, 85 L.

Ed. 1214 (1941) (quoting Healy v. Ratta, 292 U.S. 263, 270, 54 S. Ct. 700, 78

L. Ed. 1248 (1934)).  What is more, resolving any doubt in favor of remand

"prevents exposing the plaintiff to the possibility that he will win a final

judgment in federal court, only to have it determined that the court lacked

jurisdiction on removal, a result that is costly not just for the plaintiff, but for all

the parties and for society when the case must be relitigated."  Crowe v.

Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997) (internal quotations omitted).

The limitations on removal jurisdiction also recognize that the plaintiff is

the master of his own complaint.  As such, she remains free to join such claims

5

or parties in a single action as are permitted under the law and the Federal Rules of Civil Procedure.  The same is no less true where a plaintiff's decision to join a non-diverse or forum-resident party may have repercussions for purposes of removal jurisdiction.  See, e.g., Triggs, 154 F.3d at 1291 (stating that "the motive of the plaintiff [in joining defendants], taken by itself, does not affect the right to remove"); see also Garbie v. DaimlerChrysler Corp., 211 F.3d 407, 410 (7th Cir. 2000) ("Even if the [non-diverse parties] were added to prevent removal, that is their privilege; plaintiffs as masters of the complaint may include (or omit) claims or parties in order to determine the forum."); Boyer v. Snap-on Tools Corp., 913 F.2d 108, 110 (3d Cir. 1990) ("[P]laintiffs have the option of naming those parties whom they choose to sue, subject only to the rules of joinder of necessary parties.  While the plaintiffs' decision in this regard may have repercussions for purposes of diversity jurisdiction, there is no reason for a court to interfere with this inevitable consequence of a plaintiff's election unless the plaintiff had impermissibly manufactured diversity or used an unacceptable device to defeat diversity.").

These rules favoring remand, however, are not without exception.  A defendant's statutory "right of removal cannot be defeated by a fraudulent

6

joinder of a resident defendant having no real connection with the controversy." Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97, 42 S. Ct. 35, 66 L. Ed. 144 (1921). Thus, courts have established the doctrine of fraudulent joinder to allow the removal of a case to federal court despite the presence of a non-diverse or forum-resident defendant.

The Eleventh Circuit has identified three situations in which fraudulent joinder may be applicable:

> The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant. [cits.] The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts. [cit.] [The third] is where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant.

Triggs, 154 F.3d at 1287.

"The burden of establishing fraudulent joinder is a heavy one," Pacheco de Perez v. AT & T Co., 139 F.3d 1368, 1380 (11th Cir. 1998), and such a claim must be "supported by clear and convincing evidence." Parks v. New York Times Co., 308 F.2d 474, 478 (5th Cir. 1962); see also, e.g., Everett v.

7

MTD Products, Inc., 947 F. Supp. 441, 444-45 (N.D. Ala. 1996) ("A defendant has a high burden in establishing fraudulent joinder—it must present evidence that compels the conclusion that the joinder is without right and made in bad faith.  A defendant must assert with particularity that a joinder is fraudulent and support the claim by clear and convincing evidence.") (internal quotations omitted); Nat. Union Fire Ins. Co. of Pittsburgh v. Lib. Mut. Ins. Co., 878 F. Supp. 199, 202 (M.D. Ala. 1995) ("A fraudulent joinder claim must be asserted with particularity and supported by clear and convincing evidence.") (internal quotations omitted); Lane v. Champion Intern. Corp., 827 F. Supp. 701, 706 (S.D. Ala. 1993) (same).  "The determination of whether a resident defendant has been fraudulently joined must be based upon the plaintiff's pleadings at the time of removal, supplemented by any affidavits and deposition transcripts submitted by the parties.  In making its determination, the district court must evaluate factual allegations in the light most favorable to the plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor."  Id.

**B.     Fraudulent Joinder**

DMI contends that the Court should disregard Mr. Halbert's presence in this action for jurisdictional purposes because he was fraudulently joined to

defeat diversity jurisdiction.  DMI argues solely under the first basis recognized

by Triggs for establishing fraudulent joinder—that there is no possibility that

Plaintiff can prove a cause of action against Defendant Halbert.  Relying almost

exclusively on Adams v. Sears Roebuck & Co., 490 S.E.2d 150 (Ga. Ct. App.

1997), DMI argues that Defendant Halbert, as a store manager, was not an

"owner or occupier"  under O.C.G.A. § 51-3-1 because he possessed no legal

interest in the subject premises at the time of injury.  Thus, DMI contends that

Defendant Halbert owed no duty in favor of Plaintiff to exercise ordinary care

in maintaining the subject premises.[3]  For the reasons that follow, the Court

disagrees that Plaintiff's claim against Mr. Halbert offers no possibility of

recovery, and concludes instead that DMI has failed to carry its heavy burden of

establishing fraudulent joinder.

     Tort claims alleging premises liability are governed by O.C.G.A. § 51-3-

1.  That statute provides:

> Where an owner or occupier of land, by express or
> implied invitation, induces or leads others to come
> upon his premises for any lawful purpose, he is liable
> in damages to such persons for injuries caused by his

---

[3] The parties agree that Georgia law controls the substantive issues in this case.

9

> failure to exercise ordinary care in keeping the
> premises and approaches safe.

<u>Id.</u>

To recover under O.C.G.A. § 51-3-1 for injuries sustained as a result of a slip and fall, a plaintiff must prove (1) that an "owner or occupier" of the premises on which the injury occurred had actual or constructive knowledge of the condition which caused the injury, and (2) that the plaintiff lacked knowledge of the condition despite exercising ordinary care for her own safety. <u>Markham v. Schuster's Enterprises, Inc.</u>, 601 S.E.2d 712, 714-15 (Ga. Ct. App. 2004) (citing <u>Robinson v. Kroger Co.</u>, 493 S.E.2d 403, 415 (Ga. 1997)). "The fundamental basis for imposing liability under this two-prong test is that the owner or occupier of the premises had superior knowledge of the hazard which caused the slip and fall." <u>Id.</u> (citing <u>Alterman Foods v. Ligon</u>, 272 S.E.2d 327, 329 (Ga. 1980)).

As its language indicates, liability may only be imposed under O.C.G.A. § 51-3-1 against an "owner" or "occupier" of the subject premises. To determine whether a person was an owner or occupier subject to liability under O.C.G.A. § 51-3-1, the critical question is whether the individual exercised

sufficient control over the subject premises at the time of injury to justify the imposition of liability.  Scheer v. Cliatt, 212 S.E.2d 29, 31 (Ga. Ct. App. 1975). "'Whether a particular appurtenance or instrumentality is under the control of an owner or occupant is usually a question of fact.'"  Food Giant, Inc. v. Witherspoon, 359 S.E.2d 223, 225 (Ga. Ct. App. 1987) (quoting Scheer, 212 S.E.2d at 31); see also Thompson-Weinman & Co. v. Brock, 241 S.E.2d 279, 281 (Ga. Ct. App. 1977) ("Whether [an individual] retained such control over the leased property as to warrant the imposition upon it of the reasonable care standard is usually a question of fact for the jury.").

Some cases, which support DMI's legal position in this case, have suggested that the "control" required for premises liability is restricted to *legal* control over the property in the form of an ownership or other possessory interest.  See, e.g., Ga. Bldg. Servs. Inc. v. Perry, 387 S.E.2d 898, 905 (Ga. Ct. App. 1989) (stating that control is determined by either "title thereto" or "superior right to possession of property which is in the possession or control of another"); cf. Adams, 490 S.E.2d at 153 (holding, with little discussion, that store manager was not "owner or occupier" of retail establishment as a matter of law on summary judgment).  Nevertheless, it appears that the weight of the

11

Georgia cases recognizes that liability under O.C.G.A. § 51-3-1 may also be established where the individual had *supervisory* control over the subject premises at the time of injury.  In this respect, certain cases have extended liability under O.C.G.A. § 51-3-1 to managers charged with maintenance duties, Lee v. Myers, 374 S.E.2d 797 (Ga. Ct. App. 1988) (holding that manager of farmer's market operated by Georgia Department of Agriculture owed duty under O.C.G.A. § 51-3-1 to maintain safe premises), other maintenance contractors, Gregory v. Trupp, 319 S.E.2d 122, 124 (Ga. Ct. App. 1984) (discussed below), and security personnel, FPI Atlanta, L.P. v. Seaton, 524 S.E.2d 524 (Ga. Ct. App. 1999) (holding that security service hired by residential housing complex had tort duty under O.C.G.A. § 51-3-1 stemming from both O.C.G.A. § 51-3-1 and contract with property manager to protect tenants).

In Gregory v. Trupp, 319 S.E.2d at 124, for example, the Georgia Court of Appeals reversed a trial court's determination that an individual who had no possessory interest in the subject premises was not an "occupier of land," because the evidence suggested that he had a contract to mow the grass, had performed maintenance on the subject premises, and had occasionally ordered

12

children to leave.  Id.  Because a dispute of fact existed concerning the level of

the defendant's supervisory control over the property, the court concluded that

summary judgment in favor of the defendant was improper.  Id.

Applying similar reasoning, other cases have readily extended liability

under O.C.G.A. § 51-3-1 to property managers and those similarly vested with

sufficient supervisory control over the subject premises.  See, e.g., Ashley v.

Balcor Property Management, Inc., 423 S.E.2d 14, 15-16 (Ga. Ct. App. 1992)

(reversing grant of summary judgment to residential management company and

its manager and finding question of fact existed as to both parties' liability

under O.C.G.A. § 51-3-1); Moon v. Homeowners' Ass'n of Sibley Forest, Inc.,

415 S.E.2d 654, 656, 657-58 (Ga. Ct. App. 1992) (holding that both

corporation, which rented a clubhouse and swimming pool for company

engagement, and its president owed duty to guest as invitee, and specifically

noting that corporate president "is being sued for the breach of a duty owed in

his individual rather than his corporate capacity"); Norman v. Jones Lang

Lasalle Americas, Inc., 627 S.E.2d 382, 384-86 & n.2. (Ga. Ct. App. 2006)

(recognizing that property manager, who was responsible for, "among other

things, ensuring compliance with laws, ordinances, and regulations, and

inspecting, maintaining, and repairing the premises,"owed a duty—in addition to landlord—under O.C.G.A. § 51-3-1).

Consistent with the reasoning expressed in these cases, Georgia courts have defined an "owner or occupier" as a "person who maintains a place of business to sell goods or services," Rhodes v. K-Mart Corp., 522 S.E.2d 563, 565 (Ga. Ct. App. 1999), an "owner or person in charge of the premises," Coffer v. Bradshaw, 167 S.E. 119, 122 (Ga. Ct. App. 1932), or an individual responsible for "ensuring compliance with laws, ordinances, and regulations, and inspecting, maintaining, and repairing the premises" on behalf of the owner, Norman, 627 S.E.2d at 384-86 & n.2.[4]  These cases, in addition to those cited above, appear to support the proposition that a store manager, under certain circumstances and with sufficient supervisory authority, may be held liable under O.C.G.A. § 51-3-1.

Nevertheless, DMI contends that Adams v. Sears, Roebuck & Co., 490 S.E.2d at 152, establishes the categorical rule that, "[u]nder Georgia law, a

---

[4] The Georgia Court of Appeals has also suggested that "many other factors should be considered as evidence of control: Who managed the daily operations of the shop-hiring, wages, hours, etc.?   Who had the right to admit or exclude customers?  Who maintained and repaired the premises?  Who paid the bills, taxes, wages?   What were the responsibilities of the parties under the lease?"  Scheer, 212 S.E.2d at 30-31.

manager of a business is not liable for personal injuries which occur on the premises." (See Defs.' Opp. to Pl.'s Mot. to Remand [10] at 8.)  In Adams, the plaintiff brought an action alleging negligence on the part of Sears, Roebuck & Co. and its store manager for injuries the plaintiff sustained as the result of slipping and falling on a clothes hanger left on the floor of the subject premises. 490 S.E. 2d at 152.  The trial court granted summary judgment to both defendants, concluding as to the store manager that he was not an "owner or occupier" under O.C.G.A. § 51-3-1.  Id.  On appeal, the Georgia Court of Appeals affirmed with the following brief discussion:

> Adams' contention that Washington, the store manager, is personally liable for her injuries is without merit.  Regardless of whether Sears might be liable in this case, because Washington was neither an "owner nor occupier" of the Sears' store, he cannot be held liable under O.C.G.A. § 51-3-1, as a matter of law, and Adams has asserted no other basis for imposing personal liability upon him.

Id. at 152.

Adams supports Defendant's contention in this case that Mr. Halbert, simply by virtue of his status as manager of the restaurant in which Plaintiff sustained injury, may not be held liable as an "owner or occupier" under

O.C.G.A. § 51-3-1.  Nevertheless, three considerations convince this Court that—on the limited record before it—the decision in <u>Adams</u> does not render Plaintiff's claims against Mr. Halbert without an arguably reasonable basis.

First, unlike the present case, <u>Adams</u> concerned the resolution of a store manager's status as an "owner or occupier" *on a motion for summary judgment*, and thus both the trial court and court of appeals had before them evidence demonstrating the level of supervisory control the store manager exercised over the subject premises in determining the legal question of the store manager's liability under O.C.G.A. § 51-3-1.  In the present posture of this case, the Court is unable to consider the crucial facts underpinning that legal determination: specifically, the nature of Mr. Halbert's supervisory responsibilities with regard to maintaining the subject premises at the time of injury.  <u>See</u> <u>Thompson-Weinman & Co.</u>, 241 S.E.2d at 281 ("Whether [an individual] retained such control over the leased property as to warrant the imposition upon it of the reasonable care standard is usually a question of fact for the jury.").

Second, the limited discussion contained in <u>Adams</u>, which notably was without citation, indicates that the court did not intend to overrule or abandon its earlier line of cases recognizing the general rule that liability under O.C.G.A.

16

§ 51-3-1 may extend to non-owners with sufficient supervisory control over the subject premises at the time of injury.

Finally, the categorical reading of <u>Adams</u> proposed by DMI appears to be in tension with the axiomatic principle that "a master is jointly liable with his servant for damages wrought by the negligence of the servant while acting in the course and scope of his employment . . . ." <u>Griffin v. Ross</u>, 91 S.E.2d 815, 820 (Ga. Ct. App. 1956).  Thus, even if DMI is correct that Mr. Halbert is not, standing alone, an "owner or occupier" of land under O.C.G.A. § 51-3-1, it is at least reasonably arguable that Mr. Halbert, as DMI's employee, is an *agent* of DMI jointly liable under O.C.G.A. § 51-3-1 for torts committed by him in the course of his employment.[5]  As is often stated, "an agent is not exonerated from the commission of a tort merely because he acts as an agent.  He is exonerated if he is not a party to the tort, but not otherwise." <u>Hudson & Marshall, Inc. v. Pennington</u>, 166 S.E.2d 418, 419 (Ga. Ct. App. 1969).

Invoking this principle of agency in the context of premises liability, the Georgia Court of Appeals has held, in a case directly contrary to DMI's

---

[5] Indeed, it would appear that DMI's legal proposition construes O.C.G.A. § 51-3-1 as *immunizing* an agent of an "owner or occupier" from traditional principles of tort liability.

categorical legal proposition, that a superintendent, foreman, manager, and

assistant manager of an oil mill could be held jointly liable as agents of an

"owner and occupier" under the statutory predecessor to O.C.G.A. § 51-3-1.[6]

Coffer v. Bradshaw, 167 S.E. at 122-23.  There, the minor plaintiff brought suit

against Swift & Co. and four of its employees, alleging that he fell through a

negligently concealed opening in the floor of an oil mill, which caused

significant injury to the plaintiff's leg.  Id. at 120.  The plaintiff alleged that

"Coffer and Bethea, as manager and assistant manager of this mill, had general

charge, control, and supervision" of the oil mill, and "it was their duty to see

that . . . precautions were taken [and] no one, especially a minor like petitioner,

was sent into the hullhouse to get hulls unless accompanied by an employee."

---

[6] O.C.G.A. § 51-3-1 codified the rule of premises liability announced by the Georgia Supreme Court in Atlanta Cotton-Seed Oil Mills v. Coffey, 4 S.E. 759, 760 (Ga. 1887) (holding that "the owner or occupier of land who, by invitation, express or implied, induces or leads others to come upon his premises for any lawful purpose, is liable in damages to such persons for injuries occasioned by the unsafe condition of the land or its approaches").  Its statutory predecessor, enacted in 1895 and in effect at the time Coffer was decided, contains identical language as O.C.G.A. § 51-3-1.  See Ga. Civ. Code 1895, § 3824 ("Where the owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries occasioned by his failure to exercise ordinary care in keeping the premises and approaches safe.") (cited by Mandeville Mills v. Dale, 58 S.E. 1060, 1061 (Ga. Ct. App. 1907)).

<u>Id.</u> at 121.  The employee defendants moved to dismiss, arguing—as does DMI in this case—that they, "as employees of the corporate defendant, the owner of the mills and premises, were not required to use ordinary care to keep the premises safe."  <u>Id.</u> at 121.  After the trial court denied their motion, the individual defendants appealed.  Observing that an individual "cannot escape liability on the ground that in committing the tort he acted as an officer or agent of the corporation, or on the ground that the corporation may also be sued," the Court of Appeals held that the plaintiff had adequately pled a legal claim for premises liability against the defendant-employees.  <u>Id.</u> at 122-23.

Like the plaintiff in <u>Coffer</u>, Plaintiff alleges here that Defendant Halbert was a "manager" and "occupier" who had "possession" and "control of the premises where Ms. Poll fell."  (Compl. ¶¶ 15-19.)  Plaintiff's complaint can be fairly construed to allege that, Defendant Halbert, as an agent of DMI, is jointly liable for the injuries Plaintiff sustained as the result of the Defendants' negligent maintenance of the subject property.[7]  At the very least, <u>Coffer</u> and

_____

[7] Such a legal theory, it appears, was not raised or considered by the court in <u>Adams</u>.  <u>See</u> 490 S.E. 2d at 152 (noting, after rejecting argument that Adams himself was "owner or occupier" of subject premises under O.C.G.A. § 51-3-1, that "Adams has asserted no other basis for imposing personal liability upon him").

19

the fact-intensive "control" inquiry required by the cases discussed above confirm that some uncertainty exists as to whether a store manager, alleged to be in possession and control of the premises where an injury occurred, may be held liable as either an "owner or occupier" under O.C.G.A. § 51-3-1, or as an agent of an "owner or occupier" under traditional agency principles.  That uncertainty is enough to require remand.  See Lane, 827 F. Supp. at 706.

In sum, DMI has failed to demonstrate that there is no reasonably arguable basis for Plaintiff's claim against the forum defendant.  Accordingly, Plaintiff's Motion to Remand is **GRANTED**.

## IV.    Request for Attorney's Fees

Plaintiff requests that this Court impose costs and fees upon DMI pursuant to 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney's fees, incurred as a result of the removal."   The purpose of § 1447(c) is not to punish defendants for improper removal, but to compensate plaintiffs for expenses associated with obtaining a remand order.  Publix Supermarkets, Inc. v. United Food & Commercial Workers Int'l Union AFL-CIO & CLC, 900 F. Supp. 419, 422 (M.D. Fla. 1995).  Thus, attorney's fees may be awarded

even in the absence of a showing of bad faith.  Id. at 421; see Graham

Commercial Realty, Inc. v. Shamsi, 75 F. Supp. 2d 1371, 1373 (N.D. Ga. 1998)

("A finding of bad faith or improper purpose by the removing party is not

necessary.").

An award of attorneys' fees is solely in the discretion of the court.

Graham, 75 F. Supp. 2d at 1373; Gray v. N.Y. Life Ins. Co., 906 F. Supp. 628,

631 (N.D. Ala. 1995); see also See Bauknight v. Monroe County, 446 F.3d

1327, 1329 (11th Cir. 2006) (reviewing denial of costs and fees for abuse of

discretion).  Nevertheless, the exercise of the Court's discretion is not

unfettered.  In Martin v. Franklin Capital Corp., 546 U.S. 132, 126 S. Ct. 704,

163 L. Ed. 2d 547 (2005), the Supreme Court recognized § 1447(c) neither

favors or disfavors the award of fees.  As the Court recognized, "[b]y enacting

the removal statute, Congress granted a right to a federal forum to a limited

class of state-court defendants.  If fee shifting were automatic, defendants might

choose to exercise this right only in cases where the right to remove was

obvious."  Id. at 711.  At the same time, however,

> [t]he process of removing a case to federal court and
> then having it remanded back to state court delays
> resolution of the case, imposes additional costs on both

> parties, and wastes judicial resources.  Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff.

Id.  In view of these competing principles, the Court held that,

> the standard for awarding fees should turn on the reasonableness of the removal.  Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied. [cits.]  In applying this rule, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case.

Id.

Applying this standard, the Court finds an award of reasonable attorney's fees and costs inappropriate.  DMI has raised a colorable argument that this Court has jurisdiction over this action.  While the Court ultimately rejects DMI's position and declines to exercise jurisdiction, the Court finds both that DMI's removal of the action was objectively reasonable and that an award of attorney's fees would fail to further the "larger objectives" of § 1447(c).  As such, insofar as Plaintiff requests attorney's fees in her Motion to Remand, that request is **DENIED**.

22

**II.      Other Pending Motions**

In view of the Court's disposition above, Defendant Michael Halbert's Motion to Dismiss, Plaintiff's Motion to Strike, and Plaintiff's Motion to Amend the Complaint are no longer proper for resolution by this Court.  As such, those Motions are hereby **DENIED as moot**.

**Conclusion**

For the aforementioned reasons, Plaintiff's Motion to Remand to State Court and for Attorney's Fees [8] is **GRANTED in part and DENIED in part**. Plaintiff's Motion is **GRANTED** insofar as she seeks remand of this action. Plaintiff's request for attorney's fees is hereby **DENIED**.  This action is hereby **REMANDED** to the State Court of Fulton County, Georgia.

Defendant Michael Halbert's Motion to Dismiss [4]; Plaintiff's Motion to Strike [7]; and Plaintiff's Motion to Amend the Complaint [8] are hereby **DENIED as moot**.

**SO ORDERED** this  24th   day of August, 2007.

RICHARD W. STORY
UNITED STATES DISTRICT JUDGE